In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3302

CONNECTICUT INDEMNITY COMPANY,

*Plaintiff-Appellant,*

*v.*

DER TRAVEL SERVICE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 637—**Suzanne B. Conlon**, *Judge.*

ARGUED APRIL 7, 2003—DECIDED MAY 2, 2003

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* A consumer fraud lawsuit alleged DER Travel Service, Inc. ("DER") engaged in a scheme to intentionally defraud its customers. DER's insurance company, Connecticut Indemnity Company ("Connecticut"), brought this diversity action seeking a declaratory judgment that it had no obligation to defend DER in the lawsuit. The district court determined that Connecticut had a duty to defend the suit. Because the district court viewed the underlying complaint in contravention of Illinois law, we reverse.

BACKGROUND

DER was sued in the Circuit Court of Cook County, Illinois, captioned *Harter, et. al. v. Auto Europe, Inc.*, *et al.* ("*Harter*"). The *Harter* suit is a class action alleging that DER, along with other car rental companies, violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2. This appeal centers upon the content of the complaint filed in that suit.

The plaintiffs in the *Harter* case alleged that the value added tax ("VAT") imposed on car rentals in European countries was due only on the actual cost of the car rental but the defendants applied the VAT percentage to both the cost of the car rental and the booking fee they charged consumers. Plaintiffs state that no VAT was due on the booking fee earned by the defendants.

With specific reference to DER, plaintiff Edward Sadlowski claimed that DER overcharged him when he booked a rental car by inflating the size of the VAT; that is, when DER calculated the dollar amount of the VAT, it applied the VAT percentage rate to the entire price, including DER's booking fee. The complaint adds that DER failed to disclose that the VAT was not due on the booking fee. This, the *Harter* complaint states, violated the Consumer Fraud Act through "deceptive pricing and other deceptive acts" which were "intentionally and willfully effected in disregard of law." DER notified its insurer, Connecticut, about the *Harter* suit and requested coverage.

DER is insured under Connecticut's Travel Agents' Professional Liability Policy, which covers, *inter alia*, any sums DER:

> shall become legally obligated to pay as "damages" because of:
>
> Coverage C—Any negligent act, error, or omission of the "insured" or any other person for whose acts the

"named insured" is legally liable in the conduct of "travel agency operations" by the "named insured."

However, Exclusion (p) of the policy expressly excludes from Coverage C:

liability arising out of any act, error, or omission which is wilfully dishonest, fraudulent, or malicious, or in willful violation of any penal or criminal statute or ordinance, and is committed (or omitted) by or with the knowledge or consent of the "insured."

Upon receiving notice of the complaint, Connecticut notified DER that it would provide no defense in the lawsuit; it denied coverage because, it said, the alleged conduct fell within the scope of Exclusion (p). Connecticut then filed this complaint seeking a declaratory judgment that it had no obligation to defend DER in the state suit.

On cross-motions for summary judgment, the district court held that the *Harter* complaint did not clearly preclude the plaintiffs from establishing liability under a negligence standard; that the complaint did not clearly exclude a non-intentional claim under the Consumer Fraud Act and that, since a possibility remained that coverage clause C covered the claim in the *Harter* action, Connecticut was obligated to defend DER. Connecticut appeals.

## ANALYSIS

We review a district court's decision to grant summary judgment *de novo*. The district court determined that Illinois law governed this dispute, which neither party contests. Illinois law treats the interpretation of an insurance policy as a question of law that the court may resolve summarily. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993).

Whether an insurer must defend the insured is a question resolved by comparing the allegations of the underlying complaint against the insured to the insurance policy. *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 847 (Ill. 1995). Even if some of the conduct alleged is not covered that will not obviate the duty to defend if conduct covered by the policy is also alleged. *Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24, 28 (Ill. 1976). However, an insurer has no duty to defend where it is "clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). The legal labels used by a plaintiff in the underlying case are not dispositive as to whether a duty to defend exists. *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. Ct. 2001).

There is no dispute between the parties about the insurance policy itself. The terms of the policy clearly limit coverage to only negligent acts, errors, or omissions. So we focus our attention on the *Harter* complaint to determine whether its allegations potentially fall within the generous strictures of a claim for negligence.

The pertinent paragraphs of the complaint are as follows:

18. In every rental (basic or inclusive) whether by partial or full payment, the customer pays an add-on which is not for tax or insurance but is simply an extra fee to the broker, i.e., or a disguised increase in the base price.

19. This is done by the mechanism of the broker calculating the foreign sales tax as a percentage of the base price.

20. The base price includes the broker's booking fee, on which no foreign sales tax is due, because the

booking by the broker occurs entirely in the United States.

21. Nonetheless, this spurious extra charge shows up on the booking acknowledgment, either broken out separately as tax, or simply put into the final or total base price, with a statement on the booking acknowledgment that this total base price "includes tax."

22. While it is technically true that the total base price on the booking acknowledgment "includes tax," the statement and the very presentation of this price information are designed to mislead and conceal from the customer that there is an add-on which is going directly to the broker as a disguised increase in the base price, and not for any tax or legitimate add-ons for insurance or other benefits.

23. All three defendant brokers follow the same industry scheme of deceptive pricing by giving the broker an add-on which defendants intend the consumer to believe is a part of a "sales tax" or "VAT."

24. There are thousands of customers who are deceptively overcharged in this manner every year, and the defendant brokers collect millions of dollars in such overcharges annually without customers realizing how they are being deceived.

25. The scheme or device described here is inherently deceptive and is intended to deceive and mislead customers such as plaintiffs who would object to payment of any add-on presented falsely as a sales tax when in fact the amount is going to the broker.

A review of these paragraphs reveal not a hint of negligent conduct alleged. The complaint lucidly sets forth that DER purposefully engaged in a scheme to deceive consumers. The question then is whether the conduct al-

leged in the complaint is at least arguably within a category of wrongdoing covered by the policy. We have considered this question and conclude it is not. This answer is deduced from the clear and unambiguous language of the *Harter* complaint. The facts, as presented in the complaint, are consistently couched in terms of intentional deception and fraud.

The paragraphs under Count VII allege, *inter alia*:

135.  Plaintiff sues DER under the Illinois Consumer Fraud Act, 815 ILCS § 505/2 on behalf of himself, and on behalf of all class members who booked a car from DER.

137.  DER has violated the rights of all class members under the Illinois Consumer Fraud Act who booked a car from DER while residing outside of Illinois because the deceptive pricing and other deceptive acts took place at the defendant DER's principal place of business which is Illinois.

140.  The actions of the DER are intentionally and willfully effected in disregard of law.

However, these paragraphs paint only part of the picture: there are also the paragraphs incorporated by reference to Count VII, most notably those paragraphs depicting the alleged scheme. The *Harter* complaint is barren of any mention of negligence, inadvertence, error, or mistake, or anything even implying such conduct. Instead, the complaint speaks only that DER deceived, schemed, and defrauded consumers.

The factual allegations of intentional schemes notwithstanding, DER points to the fact that the plaintiffs could have asserted a negligence claim under the Consumer Fraud Act. Illinois courts have interpreted the Consumer Fraud Act in a manner such that plaintiffs do not have to prove a defendant intended to deceive them. *See*, *e.g.*,

*Rubin v. Marshall Field & Co.*, 597 N.E.2d 688, 695 (Ill. App. Ct. 1992); *Carl Sandburg Village Condominium Ass'n No. 1 v. First Co.*, 557 N.E.2d 246, 249-50 (Ill. App. Ct. 1990). DER contends, and the district court held, that a possibility exists under the Consumer Fraud Act that DER could be liable for negligently failing to tell consumers how DER calculated the VAT and that this possibility obviates the need to consider the underlying complaint at face value. We disagree.

While the district court correctly observed that negligent conduct is actionable under the Consumer Fraud Act, it is the actual complaint, not some hypothetical version, that must be considered.[1]

In *United Fire and Cas. Co. v. Jim Maloof Realty*, 435 N.E.2d 496 (Ill. App. Ct. 1982), plaintiffs brought suit against the insured, alleging knowing, willful and wanton misrepresentation. The insurer denied coverage, arguing that it had no duty to defend intentional fraud. The court found that the "complaint must be read as a whole in order to assess its true nature. Therefore, since the factual allegations of the complaint are premised upon only one theory of recovery, that of intentional fraud, . . . [the insurer] has no duty to defend its insureds." *Id.* at 498-99. *See also Mutual Service Casualty Insurance Co. v. Country Life Insurance Co.*, 859 F.2d 548 (7th Cir. 1988) (applying Illinois law) (finding no duty to defend a breach of

---

[1] The district court relied, in part, on our decision in *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178 (7th Cir. 1980) (applying Illinois law). We find this case to be distinguishable because the generalized nature of the complaint in *Solo Cup* left open the possibility of a potentially covered claim. We noted that the underlying complaint alleged "a full panoply of offenses" and that the allegations were "general." *Id.* at 1185. In the case *sub judice*, the *Harter* complaint contains none of those characteristics; it solely alleges intentional fraud.

contract claim when the underlying complaint alleged company's denial of employee benefits was an intentional scheme); *Illinois Farmers Insurance Co. v. Preston*, 505 N.E.2d 1343 (Ill. App. Ct. 1987) (finding no duty to defend because complaint expressly indicated plaintiff's reliance upon a conspiracy theory, not negligence); *Rubloff, Inc. v. American Nat'l Fire Ins. Co.*, 1997 U.S. Dist. LEXIS 6886 (N.D. Ill. 1997) (denying coverage for breach of contract claim based on knowingly wrongful conduct).[2]

## CONCLUSION

We acknowledge the well-settled doctrine that an underlying complaint must be liberally construed in favor of the insured and that any doubts be resolved in favor of the insured. *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. Ct. 2001). However, we find no evidence that the *Harter* complaint alleged DER acted in a negligent fashion. Phrases such as "mislead and conceal," "scheme or device," and "intentionally and willfully" are the paradigm of intentional conduct and the antithesis of negligent actions. Thus, Connecticut has no duty to defend or indemnify DER in connection with the consumer fraud class action. For these reasons, we reverse

---

[2] We are cognizant of the First Circuit's position in *Auto Eur., L.L.C. v. Conn. Indem. Co.*, 321 F.3d 60 (1st Cir. 2003), an identical action between Connecticut and Auto Europe, which stems from the *Harter* class action. Connecticut coincidentally provides coverage for all three defendants in the class action. While that court applied Maine law to reach its conclusion that Connecticut had a duty to defend Auto Europe, it noted that even if Illinois law was applicable, Connecticut would still not prevail. While the First Circuit's abbreviated analysis of Illinois law is dicta, we have taken it into consideration. However, we respectfully disagree with the First Circuit's conclusion with respect to the application of Illinois law.

the district court's order granting summary judgment for DER, and remand with directions to enter summary judgment for Connecticut.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*