Third Division

Filed:  August 17, 2005

No. 1-04-3423

STEADFAST INSURANCE COMPANY, ) Appeal from the 

   )     Circuit Court of

 Plaintiff-Appellant, )     Cook County. 

)

)     No. 02 CH 18381

)

CAREMARK RX, INC. and CAREMARK, INC., )     Honorable

)     John Madden,

Defendants-Appellees. )     Judge Presiding.

JUSTICE HOFFMAN delivered the opinion of the court:

In this declaratory judgment action, the plaintiff, Steadfast Insurance Company ("Steadfast"), appeals from a circuit court order entering summary judgment in favor of the defendants, Caremark Rx, Inc. ("Caremark Rx") and Caremark, Inc., finding that Steadfast has a duty to defend them in two underlying federal actions, and denying its cross-motion for summary judgment.  For the reasons which follow, we reverse and remand the matter to the circuit court for further proceedings not inconsistent with the opinions expressed herein. 

The facts giving rise to this litigation are not in dispute.  Caremark Rx and its subsidiary, Caremark, Inc., are in the business of providing pharmacy benefit management services to various health plan sponsors throughout the country.  In 2001, Steadfast issued a managed care professional liability policy (hereinafter referred to as the "Policy"), pursuant to which it agreed, under specified circumstances, to pay those sums in excess of the Policy's deductible that Caremark Rx might become legally obligated to pay as "Damages" for "Claims" made by reason of "Wrongful Acts" committed by Caremark Rx or its subsidiaries arising out of its rendering or failing to render "Professional Services" in the course of business.  Under the Policy, wrongful acts include any alleged or actual negligent act, error, or omission with respect to professional services rendered or failed to be rendered.  Any claims arising from, 
inter alia
, dishonest, fraudulent, criminal, intentional, or malicious acts or any acts of a knowingly wrongful nature are specifically excluded from coverage.

On March 22, 2002, Roland H. Bickley filed a putative class action suit on behalf of the Georgia Pacific Corporation Health and Accident Plan and all other similarly situated plans against Caremark Rx in the United States District Court for the Central District of California (hereinafter referred to as the "Bickley Action").  Bickley alleged in his six-count complaint that he is a participant in the Georgia Pacific Corporation Life Health and Accident Plan (hereinafter referred to as the "Plan"), for which Caremark Rx serves as the pharmacy benefits manager and acts as a "fiduciary" to the Plan under the Employee Retirement Income and Security Act (ERISA) (29 U.S.C. §1001 
et seq.
).  According to the factual allegations realleged in each count of the complaint, Caremark Rx contracts with retail pharmacies to provide drugs at a discounted rate for the benefit of the members of the Plan and also purchases drugs from manufacturers at a discounted price which it sells through its mail order pharmacies.  Bickley alleged that Caremark Rx is involved in a scheme whereby it "secretly and subversively" through the use of pricing spreads "diverts and converts" a portion of the discounted retail and mail drug prices from the Plan for its own use and benefit.  It is alleged that Caremark Rx carries out this scheme by entering into contracts with drug manufacturers, securing for its own benefit undisclosed discounts and rebates from the manufacturers, and favoring certain higher priced drugs in exchange for these "kickbacks."  Bickley further alleged that Caremark Rx "conspire[s] secretly" with the drug manufacturers to "subvert and circumvent" the "best pricing" rules set forth in the Omnibus Reconciliation Act (42 U.S.C. § 1396r-8) and, under this "hidden scheme", it distorts the average wholesale prices of its drugs and increases prescription costs to the Plan. 

Predicated on the factual allegations set forth above, counts I through IV of Bickley's amended complaint consist of claims for breach of fiduciary duty under ERISA.  Specifically, the complaint alleges that Caremark Rx breached its fiduciary duty by:  failing to act in good faith and candor (count I); dealing with the Plan's assets for its own interest (count II); engaging in transactions on behalf of parties whose interests are adverse to those of the Plan (count III); and receiving consideration for its own account from parties dealing with the Plan (count IV).  Count V charges Caremark Rx with misrepresentation and failure to disclose material information to the Plan, and count VI is an action for an accounting. 

Caremark Rx promptly served Steadfast with the summons and a copy of the complaint in the Bickley Action, and requested that Steadfast assume defense of the action based on the terms of the Policy.  By letter dated April 11, 2002, Steadfast stated that it had no obligation to defend or indemnify Caremark Rx in the Bickley Action.  Shortly thereafter, Caremark Rx requested that Steadfast reconsider its position in this regard. 

On May 21, 2002, while Caremark Rx was awaiting a response from Steadfast, Mary Dolan filed a complaint on behalf of the Wells Fargo Health Plan against Caremark Rx in the United States District Court for the Central District of California (hereinafter referred to as the "Dolan Action").
(footnote: 1)  The Dolan Action mirrors the Bickley Action in all material respects, as it sets forth the same claims and seeks identical relief.  Caremark Rx promptly tendered defense of the Dolan Action to Steadfast.   

By letter dated June 17, 2002, Steadfast restated that it had no obligation to defend or indemnify Caremark Rx in the Bickley Action.  Likewise, Steadfast subsequently informed Caremark Rx that it held the same position as to the Dolan Action.  

Although Steadfast maintained that it had no duty to defend or indemnify Caremark Rx in either action, it failed to seek a declaratory judgment at that time.  Instead, on September 9, 2002, Caremark Rx filed a declaratory judgment action against Steadfast in the United States District Court for the Northern District of Illinois, seeking a finding that Steadfast had an obligation to defend and indemnify it with regard to the Bickley and Dolan Actions.  During this time, the underlying complaints were both amended to include Caremark, Inc. as a party defendant.  For ease of analysis, we will hereinafter refer to Caremark Rx and Caremark, Inc. collectively as "Caremark".

After Caremark filed the federal declaratory judgment action, Steadfast filed the instant action seeking a declaration that it did not have a duty to defend or indemnify Caremark in the Bickley and Dolan Actions.  Steadfast maintained that the underlying complaints failed to allege any "wrongful act" covered by the Policy, and that the Policy specifically excluded coverage for claims arising from intentional acts or those of a knowingly wrongful nature.  Caremark filed a counterclaim, seeking a declaration that Steadfast owed Caremark a duty to defend and indemnify it in the underlying actions and that it was estopped from raising any Policy defenses.  Caremark also asserted that it was entitled to attorneys' fees under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (1) (West 2002)) because Steadfast's denial of coverage was vexatious and unreasonable.
(footnote: 2)   

Steadfast and Caremark filed cross-motions for summary judgment.  Steadfast argued in its motion that it had no duty to defend or indemnify Caremark in the underlying actions, whereas Caremark argued in its cross-motion that Steadfast owed it a duty to defend.  On September 23, 2003, the circuit court denied Steadfast's motion and granted Caremark's cross-motion, finding that Steadfast in fact had a duty under the Policy to defend Caremark in both the Bickley and Dolan Actions.  The court, however, stated in its written order that it was reserving ruling on the "issues of estoppel and application of Section 155 of the Illinois Insurance Code".  Steadfast subsequently made a motion requesting a finding of appealability pursuant to Supreme Court Rule 304(a) (hereinafter "Rule 304(a)") (155 Ill. 2d R. 304(a)) and to further stay enforcement of the September 23, 2003, order pending resolution of its appeal on the issue of the duty to defend.  The trial court made the requisite Rule 304(a) finding with respect to that order, but denied Steadfast's request to stay enforcement thereof.  The instant appeal followed.

Before considering the substantive issues raised by Steadfast, we must first discuss the question of our jurisdiction over this appeal.  Steadfast contends that our jurisdiction is invoked pursuant to Rule 304(a), which provides that, where a case involves multiple parties or claims, "an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal or both."  155 Ill. 2d R. 304(a).  Steadfast argues that "[i]t is undisputable that judgment was entered on the duty to defend claim" and, pursuant to our holding in 
Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.
, 317 Ill. App. 3d 67, 739 N.E.2d 85 (2000), an order disposing of a duty to defend claim, but reserving judgment regarding the duty to indemnify, is a final determination with respect to a definite and separate portion of the litigation.  

Caremark, on the other hand, argues that a final determination was not made on a definite and separate part of the litigation because the circuit court expressly reserved ruling on the issue of estoppel and discovery is now moving forward on that issue.  Caremark appears to be arguing that, although the trial court found that Steadfast has a duty to defend, it has yet to consider whether Steadfast was estopped from raising any Policy defenses.  According to Caremark, because the estoppel issue is an "intricate part" of the duty to defend analysis, the circuit court erred in entering a Rule 304(a) finding before resolution of that issue.  For the reasons which follow, we agree with Steadfast on the jurisdictional issue at hand.   

The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under an insurance policy that includes a duty to defend may not simply refuse to defend the insured.  
Employers Insurance of Wasau v. Ehlco Liquidating Trust
, 186 Ill. 2d 127, 150, 708 N.E.2d 1122 (1999).  Rather, the insurer has two options: (1) defend the action under a reservation of rights; or (2) seek a declaratory judgment that there is no coverage under the policy.  
Employers Insurance of Wasau
, 186 Ill. 2d at 150.  If the insurer fails to take either step and is later found to have wrongfully denied coverage, the insurer is estopped from raising any policy defenses to coverage.  
Murphy v. Urso
, 88 Ill. 2d 444, 451, 430 N.E.2d 1079 (1981). 

In this case, the trial court held that Steadfast has a duty to defend Caremark in the Bickley and Dolan Actions.  At the hearing on Steadfast's motion for a Rule 304(a) finding, the circuit court reiterated Steadfast's obligations in light of the September 23, 2003, order, stating:  "You've got to defend.  You've got to defend.  I'm not staying that [September 23, 2003] order.  I won't stay that order."  After having found in favor of Caremark on the duty to defend issue, the issue of estoppel remained relevant only to the question of whether Steadfast ultimately has a duty to indemnify Caremark in the Bickley and Dolan Actions.  Because the trial court entered a final determination with respect to the duty to defend claim, we find that we have jurisdiction over the instant appeal pursuant to Rule 304(a).  

We now turn to the merits of the appeal.  Steadfast urges us to reverse both the summary judgment entered in favor of Caremark and the denial of its own motion for summary judgment.  Our resolution of the instant appeal turns on the question of whether the underlying complaints allege facts which bring those actions within, or potentially within, the coverage afforded to Caremark under the Policy. 

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment."  
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 391, 620 N.E.2d 1073 (1993).  Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2002).  When, as in this case, parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law.  
Continental Casualty Co. v. Law Offices of Melvin James Kaplan
, 345 Ill. App. 3d 34, 37-38, 801 N.E.2d 992 (2004).  Our review of the circuit court's ruling on a motion for summary judgment is 
de novo
.  
Morris v. Margulis
, 197 Ill. 2d 28, 35, 754 N.E.2d 314 (2001). 

Addressing the issue of an insurer's duty to defend its insured, our supreme court in 
U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991), stated: 

"If the underlying complaints allege facts within or 
potentially
 within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. [Citation.]  An insurer may not justifiably refuse to defend an action against its insured unless it is 
clear 
from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. [Citation.]  Morever, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy.  [Citation.]"  (Emphasis in original.) 

Moreover, in determining whether an insurer has a duty to defend its insured, it is the alleged conduct, and not the labeling of the claim in the complaint, that is controlling.  See 
Lexmark International, Inc. v. Transportation Insurance Co.
, 327 Ill. App. 3d 128, 136-37, 761 N.E.2d 1214 (2001) ("We give little weight to the legal label that characterizes the underlying allegations.  Instead, we determine whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy."). 

The relevant portions of the Policy at issue in this case state as follows:     

"
I. INSURING AGREEMENTS

The Company will pay on behalf of any 'Insured' those sums in excess of the deductible specified in the Declarations, which any 'Insured' shall become legally obligated to pay as 'Damages' as a result of 'Claims' first made against any 'Insured' during the 'Policy Period' and reported in writing to the Company during the 'Policy Period' or within ninety (90) days after expiration of the 'Policy Period' by reason of 'Wrongful Acts' committed by any 'Insured', or by any person for whom the 'Insured' is legally responsible, and arising out of the rendering of or failure to render 'Professional Services' in the conduct of the 'Insured's' business ***."

The Policy defines a "Wrongful Act" as any "alleged or actual negligent act, error, or omission in the rendering or failure to render 'Professional Services' by any 'Insured', or by any person for whom an 'Insured' is legally responsible ***."   In addition, the Policy does not apply to any "Claim" arising from any "dishonest, fraudulent, criminal, intentional or malicious act, error or omission, or those of a knowingly wrongful nature or the willful violation of any statute or ordinance committed by or at the direction of or with the knowledge of any 'Insured'".  With respect to the duties owed to Caremark, the Policy states in relevant part that "[Steadfast Insurance] Company shall defend any 'Claim' against any 'Insured' seeking 'Damages' which are payable under the terms of this policy, even if any of the allegations are groundless, false or fraudulent."  

In this case, counts I through IV assert actions for breach of fiduciary duty under ERISA.  Count I, specifically, uses terminology usually associated with negligent conduct; namely, that Caremark was obligated to act with "care, skill, prudence and diligence".  However, this is the extent of such language found in the underlying complaints.  Counts I through IV are all predicated on the specific factual allegations contained in the preceding paragraphs of the complaints.  According to these allegations, Caremark participated in a "hidden scheme" whereby it "secretly and subversively" "diverts and converts" a portion of the discounted retail and mail order drug prices through the use of pricing spreads.  The complaints allege that Caremark carries out this scheme by entering into contracts with drug manufacturers on behalf of the Plan, securing for its own benefit undisclosed discounts and rebates from the manufacturers, and favoring certain higher priced drugs in exchange for these "kickbacks."  It is further alleged that Caremark "conspire[s] secretly" with drug manufacturers to "subvert and circumvent" the "best pricing" rules set forth in the Omnibus Reconciliation Act (42 U.S.C. § 1396r-8).  

Steadfast argues that the Policy affords no coverage for the claims asserted against Caremark because, as demonstrated by the language set forth above, the underlying complaints do not allege negligent acts, but rather, are replete with factual allegations of intentional, dishonest, and knowingly wrongful conduct; claims which are specifically excluded from coverage under the Policy.  It asserts that, although counts I through IV are couched as breach of fiduciary duty claims, it is clear that, when reading the complaints as a whole, Caremark's alleged wrongful conduct is intentional and not negligent.  For its part, Caremark contends that the ERISA breach of fiduciary duty claims trigger coverage under the "negligent act, error or omission" language of the Policy because, when confronted with similar allegations and policy language in 
National Union Fire Insurance Co. v. Associates in Adolescent Psychiatry
, No. 86 C 4959 (N.D. Ill. June 18, 1987), the federal district court held that allegations of intentional misconduct in a complaint do not defeat ERISA breach of fiduciary duty claims.               

In 
National Union Fire Insurance Co.
, the insurance policy at issue provided coverage, as in this case, for "any negligent act, error or omission in rendering professional services for others" and excluded coverage for any claim "arising out of any active, deliberate, dishonest, intentional, fraudulent, criminal or malicious acts."  
National Union Fire Insurance Co.
, No. 86 C 4959, slip op. at 1.  The  original underlying complaint alleged a claim for breach of fiduciary duty under ERISA, and state law claims for negligent misrepresentation and common law fraud.  Subsequently, the insurance company undertook the defense of the action under a reservation of rights and successfully moved to dismiss the common law counts of the complaint on the basis that they were preempted by section 1144 of ERISA (29 U.S.C. § 1144).  A second amended complaint was filed, alleging a complex scheme whereby the insureds participated in a conspiracy to defraud the plaintiff, which was incorporated by reference into each of the federal counts.  On motion of the insurance company, the state law claims were again dismissed as being preempted by ERISA.  Those claims were the only claims in the complaint which specifically alleged that the insureds acted negligently.  Upon the filing of a third amended complaint, the insurance company filed a declaratory judgment action, arguing that it had no duty to defend because the complaint was replete with allegations of fraud, deceit, and conspiracy which plainly came within the policy's exclusions for intentional acts.  Noting that good faith is not a defense to an ERISA action, the district court held that "because the complaint alleges a breach of fiduciary duty under ERISA, and proof of intentional acts is not required for recovery, the ERISA claim is potentially within the policy coverage."  
National Union Fire Insurance Co.
, No. 86 C 4959, slip op. at 3.  

Caremark argues that 
National Union Fire Insurance Co
. is dispositive of the issue in this case and, as a consequence, a similar result is warranted.  We disagree for several reasons.  First, the district court in 
National Union Fire Insurance Co
. found the procedural posture of that case to be important, stating that "by finding that *** [the] state law claims, including the claim for negligent misrepresentation, were preempted by ERISA, *** [the court] necessarily found that these claims were encompassed by *** [the] ERISA claim."  In sharp contrast, no similar negligence claims under ERISA have ever been asserted in either the Bickley or Dolan Actions.  Second, both Caremark and Steadfast correctly note that a fiduciary under ERISA can breach its duties negligently or intentionally.  See 
Schmidt v. Sheet Metal Workers' National Pension Fund
, 128 F. 3d 541 (7
th
 Cir. 1997).  We believe that, because the Policy specifically provides coverage only for a "negligent act, error, or omission", we cannot simply ignore the absence of allegations of negligent conduct and inclusion of only intentional conduct in the complaints.  To do so would go against the well-established legal standards by which a court determines whether an insurer is obligated to defend its insured.  See 
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 479, 687 N.E.2d 72 (1997) (the duty to defend arises if the 
facts alleged 
in the complaint fall within, or potentially within, the language of the policy) (Emphasis added.).

Absent the isolated allegation that Caremark had a duty to act with skill, care, and prudence, the factual allegations upon which every breach of fiduciary duty count is based clearly predicate liability on a theory of intentional conduct; namely, a hidden scheme to deliberately convert a portion of the Plan's assets by conspiring with drug manufacturers in exchange for kickbacks.  The question then becomes whether the conduct alleged in counts I through IV of the underlying complaints is at least arguably within a category of wrongdoing covered by the Policy.  We conclude that it is not.  

When asked to consider a similar question in 
Illinois Farmers Insurance Co. v. Preston
, 153 Ill. App. 3d 644, 505 N.E.2d 1343 (1987), the court held that, based on the allegations of the underlying complaint, the insurer did not have a duty to defend its insured.  Specifically, the insurance policy provided liability coverage for accidental bodily injury, but excluded coverage for bodily injury arising from the intentional acts of the insured.  In finding that the underlying breach of contract and defamation claims fell outside the parameters of the policy, the court stated:

"Even though the complaint does include in its third paragraph a claim for 'damages *** for tortious conduct and breach of contract,' the subsequent 22 paragraphs leading up to the allegation in paragraph 25 expressly indicate [the plaintiff's] reliance upon a conspiracy theory. ***  Such plan or design obviously requires intentional involvement of the conspirator and would thereby plainly fall within the 'intentional acts' exclusion in this insurance policy."  
Illinois Farmers Insurance Co.
, 153 Ill. App. 3d at 650-51.    

A similar result was reached in 
West American Insurance Co. v. Vago
, 197 Ill. App. 3d 131, 553 N.E.2d 1181 (1990).  The insurance policies at issue in that case provided coverage, under certain circumstances, for personal injury or bodily injury to others, but excluded coverage for bodily injury "which is expected or intended by the insured."  Count I of the underlying complaint charged the insured with battery, count II asserted a cause of action for intentional infliction of emotional distress, count III alleged that the insured forcibly restrained the plaintiff, and count IV sought punitive damages.  The complaint was subsequently amended, adding a fifth count sounding in negligence.  On appeal, the court, in essence, stated that the actual conduct of the insured alleged in the underlying complaint cannot be ignored, even when the complaint contains a claim which does not require an intentional act.  The court reasoned as follows:

"While count V of the tort complaint uses terminology generally associated with negligence, speaking of [the insured's] 'duty to act with due care' and his alleged 'breach of said duty,' that count incorporates the specific factual allegations of the other four counts. According to these allegations, [the insured] grabbed the [plaintiff] from behind, locked his arms around her waist, and thrust his pelvis against her buttock several times.  Such course of conduct is clearly intentional and not merely negligent or accidental."  
West American Insurance Co.
, 197 Ill. App. 3d at 137.  

The court further held that the policy's exclusionary clause clearly applied to the allegations of the complaint and, as a consequence, the insurer had no duty to defend the insured.  
West American Insurance Co.
, 197 Ill. 3d at  138.  See also 
Rubloff, Inc. v. American National Fire Insurance Co.
, No. 95 C 6845 (N.D. Ill, May 13, 1997) (in focusing on the allegedly tortious conduct on which the action was based, the court denied coverage for a breach of contract claim based on knowingly wrongful conduct).  

Based on the foregoing analysis, we conclude that counts I through IV fail to allege conduct which constitutes a negligent act, error, or omission.  As noted by the court in 
Connecticut Indemnity Co. v. Der Travel Service, Inc.
, 328 F.3d 347, 351 (7
th
 Cir. 2003), phrases such as "mislead and conceal," "scheme or device," and "intentionally and willfully" are the "paradigm of intentional conduct and the antithesis of negligent actions."  As a consequence, we find that Steadfast does not have a duty to defend the claims asserted in counts I through IV of the underlying complaints. 

Caremark contends that, irrespective of the breach of fiduciary duty claims, we need only look to count V of the underlying complaints to find that Steadfast owes Caremark a duty to defend.  Count V of the underlying complaints assert that Caremark failed to disclose that it:  (1) creates and retains for its own use and benefit retail and mail order pricing spreads; (2) receives and retains for its own account drug manufacturer rebates and discounts; (3) receives and retains for its own use and benefit rebates and discounts from drug manufacturers in exchange of favoring their products; (4) "conspires" with drug manufacturers to inflate the average wholesale price of prescription drugs and that, in connection with such "secret dealings", receives rebates and discounts which it retains for its own benefit; and (5) sells information concerning the Plan's participants without their consent to third parties.  According to Caremark, the underlying complaints fail to specify whether it was acting negligently or intentionally in failing to disclose the foregoing information to the underlying plaintiffs.  As such, Caremark argues that the allegations are potentially covered under the Policy.  We disagree.

This very argument was rejected by this court in 
Atlantic Mutual Insurance Co. v. American Academy of Orthopedic Surgeons
, 315 Ill. App. 3d 552, 734 N.E.2d 50 (2000).  In that case, the underlying complaint asserted conspiracy and concert of action claims against the insured as a result of complications from the implantation of certain pedicle screw fixation devices.  The insurance policy at issue specifically excluded coverage for any intentional acts.  On appeal, the insured argued that paragraph 222 of the complaint triggered coverage under the insurance policy.  Paragraph 222 alleged that "[u]nder the scheme agreed to and adopted to implement the intercompany/association conspiracy, the participants in the conspiracy acted to conceal and otherwise failed to disclose that:"  (1) the spine surgeons and scientists had a direct financial interest in the sale of pedicle screw fixation devices; (2) the FDA had consistently refused to approve such devices for use; (3) the ongoing clinical trial failed to provide evidence to show that any medical device was safe when used for pedicle screw fixation; and (4) the complications associated with the use of pedicle screw fixation surgery was not established by any valid scientific evidence.  We emphasized that the question of whether there is potential for coverage under a policy does not depend on the semantics of the underlying action, but rather, on the facts alleged in the complaint.  Looking at the facts alleged in the underlying complaint, we held that the allegations in paragraph 222 were insufficient to impose a duty to defend because the complaint clearly predicated liability on a theory of intentional misconduct.  
Atlantic Mutual Insurance Co.
, 315 Ill. App. 3d at 565-66.  

As in 
Atlantic Mutual Insurance Co
. the factual allegations in the instant underlying complaints make clear than any failure to disclose information was part of Caremark's overall scheme to mislead and defraud the Plan.  Count V, like the other counts, specifically realleges the allegations in the preceding paragraphs.  To the extent that Caremark argues that the allegations of count V come within potential coverage because the count fails to specify whether Caremark was acting negligently or intentionally in failing to disclose information, we reject its argument in this regard.  "It is the actual complaint, not some hypothetical version, that must be considered."  
Connecticut Indemnity Co.
, 328 F. 3d at 350-51.  Because the complaint predicates liability on a theory of intentional misconduct, we conclude that the allegations in count V suffer from the same infirmities as the allegations in counts I through IV.

Having compared the allegations of the underlying complaints with the relevant provisions of the Policy, we conclude that Steadfast does not have a duty to defend Caremark in the Bickley and Dolan Actions.  Caremark argues that we must still consider the question of whether Steadfast is estopped from raising any Policy defenses.  Caremark's argument in this regard, however, exhibits a misunderstanding of the application of the estoppel doctrine.  In 
Employers Insurance of Wausau
, our supreme court stated that the estoppel doctrine is not applicable if the insurer had no duty to defend its insured or if the insurer's duty to defend was not properly triggered.  
Employers Insurance of Wausau
, 186 Ill. 2d at 151.  The court explained that such is the case "where the insurer was given no opportunity to defend; where there was no insurance policy in existence; and where, 
when the policy and the complaint are compared, there clearly was no coverage or potential for coverage
."  (Emphasis added.)  
Employers Insurance of Wausau
, 186 Ill. 2d at 151.  Because we have concluded that Steadfast owes no duty to defend Caremark in the underlying actions, the doctrine of estoppel is inapplicable.  

We also wish to note that Steadfast moved for summary judgment not only on the question of its duty to defend, but also on the question of its duty to indemnify Caremark in the underlying actions.  Although the parties have addressed the majority of their appellate briefs to the question of the propriety of a summary judgment on the duty to defend issue, it logically follows that, where there is no duty to defend, there can be no duty to indemnify.  See 
Fremont Casualty Insurance Co.
, 317 Ill. App. 3d at 73 ("An insured's duty to defend *** is broader than its duty to indemnify. [Citation].  Therefore, where no duty to defend exists, no duty to indemnify could ever exist."); 
Crum & Forster Managers Corp
., 156 Ill. 2d at 398.  

For the reasons stated above, we find that the trial court erred in granting Caremark's motion for summary judgment, finding that Steadfast had a duty to defend it in the Bickley and Dolan Actions.  We also find that the trial court erred in denying Steadfast's motion for summary judgment with respect to the question of its duty to defend and, as no duty to indemnify can exist in the absence of a duty to defend, it likewise erred in denying Steadfast's motion for summary judgment with respect to the question of its duty to indemnify. Accordingly, we reverse the trial court's September 23, 2003, order granting Caremark's motion for summary judgment, and denying Steadfast's motion, and enter summary judgment in favor of Steadfast on the issue of its duty to defend and duty to indemnify Caremark.  However, because Steadfast failed to move for summary judgment on the issue of Caremark's entitlement to attorneys' fees under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (1) (West 2002)), a claim which still remains pending in the circuit court, we remand this matter to the circuit court for resolution of that claim in a manner which is not inconsistent with the opinions expressed herein.    

Reversed and remanded.  

SOUTH and ERICKSON, JJ., concur.

FOOTNOTES
1: Both the Dolan and Bickley Actions were subsequently transferred to the United States District Court for the Northern District of Alabama.  On December 30, 2004, the district court dismissed the Bickley Action with prejudice.  The district court's decision is now on appeal to the United States Court of Appeals for the Eleventh Circuit.  With respect to the Dolan Action, Caremark filed a motion to dismiss, which has yet to be ruled upon.

2:  Caremark's federal declaratory judgment action was subsequently dismissed.