In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3365

DEL MONTE FRESH PRODUCE N.A., INC., *et al.*,

*Plaintiffs-Appellants,*

*v.*

TRANSPORTATION INSURANCE CO.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 1658—**Suzanne B. Conlon**, *Judge.*

ARGUED APRIL 5, 2007—DECIDED SEPTEMBER 5, 2007

Before EASTERBROOK, *Chief Judge*, and BAUER and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Plaintiffs, six different Del Monte companies (to which we refer collectively as "Del Monte"), brought a declaratory judgment action against their insurance carrier, Transportation Insurance Company. Del Monte's general liability policy with Transportation includes coverage for claims of personal injury or advertising injury. Del Monte took the position that this coverage was triggered by a series of class actions filed against it in 2004. In those cases, the plaintiffs claimed that they were injured by Del Monte's alleged monopoly in the extra-sweet pineapple market. Transportation took the position

that the claims against Del Monte fell within an exception from coverage found in the policy. After examining the policy, the district court concluded that the policy did exclude Del Monte's claims, and it therefore granted summary judgment for Transportation. We affirm.

**I**

This is a diversity action, and so we begin by noting that Transportation is an Illinois corporation with its principal place of business in Illinois, while the states of incorporation of the six plaintiffs are California, the Cayman Islands, Delaware, and Florida; all six have their principal places of business in Florida. The amount in controversy is substantially in excess of the $75,000 required by 28 U.S.C. § 1332.

Transportation issued a general liability policy to a Del Monte affiliate covering "advertising injury" and "personal injury" occurring between December 31, 1995, and December 31, 1996. The pertinent language from the policy stated:

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding adver-

tising, publishing, broadcasting or telecasting done by or for you; [and]

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services[.]

The policy defines "advertising injury" and "personal injury" as follows:

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right to privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

. . . .

13. "Personal injury" means injury, other than "bodily injury[,"] arising out of one or more of the following offenses:

a. False arrest, detention or home imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or

> disparages a person's or organization's goods; products or services; or

> e. Oral or written publication of material that violates a person's right to privacy.

The policy excludes from coverage many injuries arising from the insured's intentional conduct, although the parties disagree about the extent of the exclusion. Specifically, the policy states that:

> This insurance does not apply to:

> a. "Personal injury" or "advertising injury":

>> (1) Arising out of oral or written publication of material, if done by or at the direction of the insured *with knowledge of its falsity*; [or]

>> (2) Arising out of the *willful violation of a penal statute* or ordinance committed by or with the consent of the insured.

(emphasis added).

In 2004, a series of consumer class actions was filed against Del Monte claiming fraud and violations of the antitrust laws arising out of Del Monte's marketing of its Fresh Del Monte Gold™ pineapples. According to the complaints, Del Monte applied for and received a patent on a genetic sibling to the Gold pineapple ("the CO-2 patent") and misrepresented in its application that the new pineapple variety was "extra sweet" and therefore differed from other varieties. The complaints further allege that Del Monte disseminated its misrepresentations through industry publications and sued two competitors for patent infringement, even though it knew that its claims about the extra-sweetness of its new pineapple were false. Eventually, Del Monte withdrew the CO-2 patent and settled the infringement lawsuits. Del Monte's customers alleged injuries that accrued during the period

of time when, thanks to its patent, Del Monte had a monopoly in an alleged market for extra-sweet pineapples. Each complaint is based on allegations that Del Monte knowingly submitted fraudulent patent applications, knowingly sent false letters to competitors regarding its patent rights, and knowingly engaged in fraudulent patent litigation.

Del Monte tendered these complaints to Transportation, seeking coverage under its policy. Transportation rejected the tender on two bases: (1) the class actions did not arise from "advertising injury" or "personal injury" under the policy; and (2) the class actions were excluded from coverage because they alleged fraud. Del Monte then filed this action for a declaratory judgment establishing Transportation's duty to defend and indemnify it under the policy. All parties agreed that the duty-to-defend issue could be adjudicated as a matter of law with only minimal discovery. Following discovery, both parties moved for summary judgment. The district court granted Transportation's motion.

## II

Del Monte urges us to find that its policy with Transportation covered its alleged disparagement of its competitors' pineapples, its alleged defamation of those companies, and its alleged "misuse of advertising ideas." Furthermore, it continues, the "knowledge of falsity" exclusion does not apply here. The policy, in its view, does not exclude coverage for intentional acts but only for the narrower set of acts that are done with knowledge of falsity. Transportation responds with, in essence, a moral hazard argument: the policy cannot be used as a "get out of jail free" card for Del Monte. If Del Monte knows that something is wrong and does it anyway, it should not, and does not, have the right to demand that Transportation pick up

the pieces. In granting summary judgment for Del Monte, the district court concluded that the class actions are Del Monte's mess to clean up. Del Monte wants to hand the broom back to Transportation. We review the court's decision *de novo*, *Connecticut Indemnity Co. v. DER Travel Service, Inc.*, 328 F.3d 347, 349 (7th Cir. 2003), applying Illinois law to this diversity action.

## A

In a duty-to-defend action, we begin with the deck stacked in favor of the insured. "[A]llegations of the underlying complaint must be construed liberally, and any doubt as to coverage must be resolved in favor of the insured." *Ill. State Med. Ins. Servs., Inc. v. Cichon*, 629 N.E.2d 822, 826 (Ill. App. Ct. 1994). The court must "look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993). Therefore, "[i]f the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action." *Id.*

## B

Our task is to evaluate the allegations in the class action cases to see whether the district court correctly concluded that the policy does not cover them. In conducting this analysis, "it is the actual complaint, not some hypothetical version, that must be considered." *Conn. Indem.*, 328 F.3d at 350-51. A complaint that is "barren of any mention of negligence, inadvertence, error, or mistake, or anything even implying such conduct [and says] . . . only that [the insured] deceived, schemed, and defrauded

consumers," would not escape an exclusion clause like the one Transportation issued here. *Id.* at 350; see also *United Fire & Cas. Co. v. Jim Maloof Realty, Inc.*, 435 N.E.2d 496, 498 (Ill. App. Ct. 1982) ("The inclusion of [a few isolated] words . . . does not transform what is in essence a specific intent to deceive into an aggravated form of negligence. The complaint must be read as a whole in order to assess its true nature."). We have previously noted that "[p]hrases such as 'mislead and conceal,' 'scheme or device,' and 'intentionally and willfully' are the paradigm of intentional conduct and the antithesis of negligent actions." *Conn. Indem.*, 328 F.3d at 351.

Implied claims that are not specifically alleged can be ignored. Legal labels in complaints are often incomplete or missing altogether; as we noted in an earlier decision, "[w]hat is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 745 (7th Cir. 2001) (quoting *Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994)). In the *Cincinnati* case, the insurance policy had a similar "knowledge of falsity" exception, and the underlying claim in the complaint was one of tortious interference, which can be alleged as either a negligence or an intentional tort action. The court concluded that, because the complaint did not limit itself to intentional tort allegations, and because the insured could be found liable even if "knowledge of falsity" was not proved, there was a duty to defend. *Cincinnati*, 260 F.3d at 746-47. The important question is therefore whether the tendered complaint alleges facts that, if proved, would show that the insured has committed acts that fall within the policy's coverage. *Id.* at 745.

There are sixteen complaints against Del Monte in the underlying class actions. For the sake of efficiency, we focus our discussion on the allegations on which Del Monte most heavily relies. Del Monte begins with James Linden's complaint, which alleges that "Del Monte implied that the CO-2 patent covered the MD-2 variety." The full allegation in the cited paragraph, however, reads as follows: "Del Monte actively sought to defraud its competition, through a series of letters that it sent to pineapple growers that it believed were cultivating the MD-2. In these letters, Del Monte implied that the CO-2 patent covered the MD-2 variety." This can be read only as a specific allegation of fraudulent and knowingly false statements; it does not charge, or even imply, negligence or mistake. This allegation of fraud is essential to the plaintiffs' claim, given the fact that *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965), recognizes a Sherman Act claim only for *fraud* on the Patent Office, not for negligent misstatements. *Id.* at 176-77.

Del Monte also points the court to Marianne Barry's complaint, which alleges that "Del Monte used [the CO-2 patent] to convince competitors that it had patented the 'Fresh Del Monte Gold' as a proprietary variety, and that Del Monte has the exclusive right to sell that variety of extra sweet pineapple." However, this paragraph begins, "Rather than recognize the invalidity of [the CO-2 patent] . . ." and continues with allegations that the patent was obtained illegally, pointing to Del Monte's "intentional[ ]" exclusion of critical information about the pineapple's development, Del Monte's "purposeful[ ]" inaccurate descriptions of the pineapple "to conceal the fact that it was not really a new variety," and a memo sent to Del Monte from a competitor prior to Del Monte's actions toward its competitors, which outlined the reasons why the Del Monte patent was illegal. The paragraph that

picks up where Del Monte's quotation leaves off states that "Del Monte's misconduct in obtaining and asserting the invalid patent was deliberate." Del Monte relies on another allegation in the Barry complaint, which alleges that "Del Monte threatened to sue or stop potential competitors from developing or marketing extra sweet pineapples." Those allegations, however, can lead to relief only if the plaintiffs first prove that Del Monte knew that its patent was invalid. These are all specific allegations of fraud, again with no alternative negligence theory.

Del Monte next lays out a list of "allegations supporting liability for disparagement/defamation based on theft of Del Monte's 'proprietary' pineapple seeds." Yet when we turn to the actual complaints, we find that each one is based on fraud or knowingly false acts. Not one could lead to relief on a showing of negligent conduct alone. For example, Del Monte quotes from the *Schwam* complaint, but in the complaint, the quoted text begins "using the fraudulently obtained patent to threaten legal action." The *American Banana* allegation quoted by Del Monte is about Del Monte's letters to competitors that are repeatedly described as "false, misleading, and threatening" that were part of an alleged "anticompetitive campaign designed to stifle competition and maintain a monopoly." The *J. Bonafede* citation is about letters alleged to be "threatening . . . attempts by Fresh Del Monte to mislead growers." The *Just-A-Mere* passage describes Del Monte's legal action against one competitor in which the competitor alleged "that Del Monte had attempted to monopolize the fresh whole extra-sweet pineapple market through fraudulent obtainment of [the CO-2 patent]."

Del Monte now claims that plaintiffs' allegation that it sent letters including false and misleading statements does not require a finding of knowledge of falsity in order to be proved. This may be true in the abstract, but that reading is precluded by the allegations in the complaints.

Here, the class plaintiffs have said that the false and misleading letters are part of a knowingly fraudulent scheme; they do not seek any relief based on the contents of the letters.

Del Monte also contends that "[n]owhere is it alleged that Del Monte knew these statements to be false at the time they were made" and therefore this conduct does not fall within the knowledge of falsity exclusion. As we just pointed out, however, the complaints allege that the letters were sent well after Del Monte committed its allegedly fraudulent acts. Unless Del Monte is claiming that it did not know about its own alleged actions, this claim too asserts just such knowledge on Del Monte's part.

Del Monte does not point to a single factual allegation that is not a part of a specific allegation of fraud and that does not use the language of the "paradigm of intentional conduct." The class plaintiffs can prevail only if they are able to prove that the underlying statements made by Del Monte were knowingly false. Therefore, the complaints at issue in this case fall squarely within the exclusion in the policy for personal or advertising injury if the injury arose out of statements made by the insured (or at its direction) with knowledge of falsity.

Even if that exclusion bars some claims, Del Monte argues that there are others that fall outside the exclusion. It points out that some of the class complaints include allegations under various state statutes that do not require proof of knowledge of falsity. We repeat that the application of the "knowledge of falsity" exclusion is based on the actual pleadings, even when the statute underlying the action allows relief on a lesser showing of culpability. At oral argument, Transportation acknowledged that the class action complaints could have included requests for relief based on conduct that does not require a showing of knowingly false statements. But they

did not. As we said in *Connecticut Indemnity*, "[w]hile . . . negligent conduct is actionable under the Consumer Fraud Act, it is the actual complaint, not some hypothetical version, that must be considered." 328 F.3d at 350-51. Liability will not attach in the cases against Del Monte without a showing of knowledge of falsity, because the allegations against Del Monte are not grounded in any theory of relief except fraud. The statutes underlying the class action complaints do not change this conclusion.

## III

Del Monte argues in the alternative that the accusations that it marketed its Gold™ pineapple as "unique" are, in reality, advertising injury claims of misappropriation that trigger Transportation's duty to defend. Once again, careful analysis of the complaint does not bear that out.

Misappropriation of an advertising idea occurs when the insured wrongfully takes a competitor's idea about the solicitation of business. *Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 991 F. Supp. 1024, 1038 (N.D. Ill. 1998) (applying Illinois law). In *Native American Arts, Inc. v. Hartford Casualty Insurance Co.*, 435 F.3d 729 (7th Cir. 2006), for example, the insured was accused of "trad[ing] upon a reputation, history, and sales advantage that it did not deserve." 435 F.3d at 733. By contrast, nowhere in the class action complaints is Del Monte accused of taking the descriptions "unique" or "extra-sweet" or "Gold" from a competitor. Rather, the class plaintiffs allege that Del Monte misled consumers by labeling its products as the *only* products worthy of such labels. Furthermore, the conduct at issue in the class actions is not Del Monte's advertising; it is Del Monte's fraudulent conduct to undermine its competitors' advertising. The class actions will not succeed by proving only that Del Monte used the

descriptions "unique" or "extra-sweet" or "Gold," or even by proving that some of Del Monte's competitors could have used these descriptions. The class actions premise the right to relief on the allegation that Del Monte knew that it was not entitled to the exclusive use of these descriptions.

Because the allegations here specifically charge fraudulent conduct and an underlying fraudulent scheme, there is no duty to defend under the policy. Del Monte's misappropriation argument does not change that result.

## IV

The allegations against Del Monte in the underlying complaints are specific. They depend on a showing of knowledge of falsity as part of an underlying fraudulent scheme in order to obtain relief. Del Monte believes that Transportation still has the duty to defend them because, as it claimed at oral argument, the statements Del Monte made were true. But this misses the point. Whether there is a duty to defend depends on the complaint, not on the insured's belief that the complaint is mistaken. If Del Monte's statements prove to be true, it will not be liable in the class actions. It cannot be the case that the policy exclusion applies only when the insured concedes that it has engaged in false or fraudulent acts. The allegations rule, and under these allegations, Transportation had no duty to furnish a defense for Del Monte.

We AFFIRM the judgment of the district court.

No. 06-3365                                                    13

A true Copy:

    Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*