Fourth Division
May 27, 2010

Nos. 1-08-1693, 1-08-3055, 1-08-3057, 1-08-3058 (Cons.)

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Defendant | ) | No. 06 CH 19015 |
| | ) | |
| (Father and Sons Contractors, Inc., | ) | |
| | ) | |
| Defendant-Appellant). | ) | |
| _____ | ) | |
| | ) | |
| WEST BEND MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BARRY BATIA and KAREN BATIA, | ) | |
| | ) | |
| Defendants | ) | No. 06 CH 19155 |
| | ) | |
| (Father and Sons Contractors, Inc., | ) | |
| | ) | |
| Defendant-Appellant). | ) | |
| _____ | ) | |
| | ) | |
| WEST BEND MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |

1-08-1693, 1-08-3055, 1-08-3057, 1-08-3058 (Cons.)

v.                                                    )
                                                     )
ELENA ZUNIGA and FEDERICO ZUNIGA,                    )
                                                     )
                    Defendants                        )          No. 06 CH 19415
                                                     )
(Father and Sons Contractors, Inc.,                  )
                                                     )
                    Defendant-Appellant).             )
_____)
                                                     )
WEST BEND MUTUAL INSURANCE COMPANY,                  )
                                                     )
                    Plaintiff-Appellee,               )
                                                     )
          v.                                          )
                                                     )
ISIDORA ROBLES and ERNESTO ROBLES,                   )
                                                     )
                    Defendants                        )          No. 06 CH 19418
                                                     )
(Father and Sons Contractors, Inc.,                  )          Honorable
                                                     )          Kathleen M. Pantle,
                    Defendant-Appellant).             )          Judge Presiding.

JUSTICE NEVILLE delivered the opinion of the court:

In four separate actions consolidated for this appeal, West Bend Mutual Insurance Company filed four complaints and requested four separate judgments declaring it had no duty to defend its insureds, Father & Sons Contractors, Inc., and Father & Sons Remodelers, Inc. (collectively, Father & Sons), in four separate underlying lawsuits. The trial court entered four orders which granted West Bend summary judgment on all four of its complaints because the court found the underlying lawsuits alleged no occurrences within the purview of the provisions of the insurance policies. In this appeal, Father & Sons contends that the insuring agreements do not include the term

- 2 -

1-08-1693, 1-08-3055, 1-08-3057, 1-08-3058 (Cons.)

"occurrence." We affirm for the following reasons: (1) we find that the underlying complaints fail to allege an "occurrence" within the purview of the provisions in the policies; (2) we find that the underlying complaints fail to allege property damage within the purview of the provisions in policies; and (3) we find the policies' exclusions for expected or intended injury also preclude coverage for the acts alleged in the underlying complaints.

BACKGROUND

West Bend sold Father & Sons commercial general liability insurance policies to cover the period from January 2004 through July 2006. Father & Sons paid extra premiums to obtain separate endorsements to cover liability for home repair and remodeling. The endorsements modify the coverage provided under the general liability policies. In the endorsements' separate insuring agreements, West Bend promised:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'improper home repair and remodeling' to which this insurance applies. *** We may at our discretion, investigate any incident and settle any claim or 'suit' that may result. But:

(1) The most we will pay for 'improper home repair and remodeling' at any one 'residence' is $10,000 *** unless other amounts are indicated in the Schedule of this endorsement."

The schedule for the endorsement provides:

"Limit of Liability for 'property damage' arising out of 'improper home repair and remodeling' – $10,000 per 'occurrence.' "

The home repair and remodeling endorsements also had their own exclusions for expected or intended injury, incomplete work, and the work of subcontractors. The general liability policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies define "property damage" as "[p]hysical injury to tangible property *** [or l]oss of use of tangible property that is not physically injured." The endorsement explains, under the exclusion for expected or intended injury, that the insurance does not cover " 'improper home repair and remodeling' knowingly performed by the insured."

In 2006, the Attorney General of Illinois filed a lawsuit on behalf of the People of Illinois against Father & Sons Contractors and Ronald Kafka, who allegedly controlled both Father & Sons Contractors and Father & Sons Remodelers. The Attorney General alleged that in 1980 the State sued Kafka for violations of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1979, ch. 121 1/2, par. 261 *et seq.).* The court entered an injunction prohibiting certain abuses by corporations Kafka operated. The State sued Kafka and his corporations a second time in 1985. A consent decree ended that case, with Kafka agreeing to disclose all uses of subcontractors and to refrain from intentionally violating building codes. In 2000, Kafka agreed to the entry of another consent decree that barred him from continuing his practice of abusing and deceiving his customers.

According to the 2006 complaint, the pattern of abuse and deception did not stop. The Attorney General alleged:

> "a. [Father & Sons Contractors] misrepresented the start and/or completion
>
> date of many projects, and if consumers complained about delays, [Father & Sons

Contractors] cited the printed provision of the contract which provides for no start or completion date(s).

b. [Father & Sons Contractors] misrepresented that they had not had complaints about their construction work ***.

* * *

f. [Father & Sons Contractors] misrepresented that certain work would be included in construction projects, which was not included.

* * *

i. [Father & Sons Contractors] entered into contracts for certain work and, after taking a deposit, refused to do the project unless money in excess of the contract price was paid.

j. [Father & Sons Contractors] misrepresented the nature of documents.

k. [Father & Sons Contractors] misrepresented the type and quality of materials that would be used on construction projects.

l. [Father & Sons Contractors] performed work in a shoddy and unworkmanlike manner and caused damage to the homes of the consumers that often went unrepaired, which included, *inter alia*, leaky roofs, damaged walls, improperly installed gutters and windows, and plumbing defects.

m. [Father & Sons Contractors] misrepresented to consumers that [it] would not use subcontractors *** when, in fact, [it] used subcontractors to do the work."

The Attorney General listed some of the customers Kafka and Father & Sons Contractors

allegedly defrauded in 2004 and 2005. According to the Attorney General's complaint, Father & Sons Contractors installed a roof for one customer, and the roof leaked, damaging the floor, a ceiling, and some cabinets. For another customer, Father & Sons Contractors installed warped hardwood floors. For another customer, Father & Sons Contractors constructed a porch on rotting support beams. Subcontractors constructing new bedrooms for another customer "incorrectly raised the roof line by 18 inches, eliminating an entire room."

In the lawsuit, the Attorney General sought a finding that Kafka and Father & Sons Contractors violated the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2004)) and the Home Repair and Remodeling Act (815 ILCS 513/1 *et seq.* (West 2004)). The Attorney General asked the court to enjoin Kafka and Father & Sons Contractors from engaging in home repairs and remodeling. In addition, the Attorney General asked for an order directing Kafka and Father & Sons Contractors to pay restitution and a substantial penalty.

Individual homeowners also filed their own lawsuits against Father & Sons. In February 2005, Elena and Federico Zuniga (the Zunigas) sued Father & Sons Remodelers and Kafka for consumer fraud, breach of contract, breach of warranty, unjust enrichment and common law fraud. The Zunigas' complaint alleged that Father & Sons Remodelers agreed to build three new rooms on their home and install a new furnace and an air conditioning unit. According to the Zunigas' complaint, Father & Sons Remodelers never completed the work. The Zunigas specifically alleged:

> "b. the electrical work contained improper wiring;
>
> c. the vinyl windows were improperly installed ***; [and]
>
> d. the floor framing is improper."

The Zunigas refer to other cases in which Kafka abused homeowners in similar ways, alleging that the cases establish "a pattern and practice *** of violating the rights of homeowners." Father & Sons Remodelers misrepresented the scope of the work it agreed to do, and it included less in the contract than it said in its oral representations. Father & Sons Remodelers also misrepresented the completion date. Father & Sons Remodelers persuaded the Zunigas, through deception, to obtain "by owner" work permits, and the permits eventually led to a "stop work" order.

Later in 2005, Barry and Karen Batia (the Batias) sued Father & Sons Contractors for consumer fraud and breach of contract. The Batias' complaint alleged that Father & Sons Contractors agreed to construct an addition to their home. According to the Batias' complaint, Father & Sons Contractors breached the contract by:

> "Failing to correctly lay the concrete foundation for the addition, causing damage to other parts of the existing home;
>
> *** Constructing the floor joists incorrectly;
>
> *** [and] Failing to complete construction of the roof of the addition, causing water to pour in and substantially damage the addition and existing home."

The Batias' complaint alleged that Father & Sons Contractors misrepresented the quality of the work performed, fraudulently used architectural plans other than the plans the Batias approved, and represented that subcontractors would do only air conditioning work, and then hired subcontractors for "every aspect of the work."

A third lawsuit in 2005 was filed by Isidora and Ernesto Robles (the Robles). They hired Father & Sons Remodelers to add an enclosed porch to their home and to remodel a bathroom.

According to the complaint:

"[Father & Sons Remodelers] never obtained proper permits for the work called for by the contract.

*** The work done by [Father & Sons Remodelers] on the property was defective, lacking in good workmanship and in violation of City Code.

* * *

*** Because the project was left incomplete and unfinished ***, [the Robles] have incurred and paid high gas bills for home heating over the 2004-05 winter."

The Robles' complaint also alleged that Father & Sons Remodelers violated the Consumer Fraud Act when it misrepresented that it had been in business 40 years, when it misrepresented that it would obtain all necessary permits, and when it failed to complete the work.

Father & Sons tendered defense of all four lawsuits to West Bend. West Bend filed four separate lawsuits seeking judgments declaring that it had no duty to defend or indemnify Father & Sons in the four lawsuits filed by the Attorney General, the Zunigas, the Batias and the Robles.

West Bend moved for summary judgment in all four of its lawsuits. It claimed that the underlying lawsuits included no allegations of occurrences or property damage within the meaning of the policies, and the exclusions for expected injury, ongoing work and subcontractors' work barred the claims.

In the case involving the Attorney General's complaint, the trial court held:

"In order to determine coverage this Court must construe the definition of 'occurrence' together with the policy's specific exclusion for expected or intended

injury. *** [I]f the insured was consciously aware that the injuries were practically certain to be caused by his conduct, the injuries are considered 'expected' from the standpoint of the insured and are excluded from coverage under the policy. [Citation.]

In the present matter, the Attorney General's Complaint is predicated upon intentional acts of misconduct which produced expected or intended results. Acts of faulty workmanship are not the typical fortuitous actions constituting accidents. ***

*** The allegations are not allegations of negligent work, but of intentional acts done in violation of the [Consumer Fraud Act] and other statutes. The underlying complaint makes it clear that the consumer examples are set forth *** for illustrative purposes of specific instances of misconduct by Father & Sons, and not as allegations of negligence. ***

As the acts alleged in the underlying complaint do not fall within the definition of 'occurrence' within the policy, coverage is precluded and therefore West Bend has no duty to defend."

In the case involving the Zunigas' complaint, the court concluded that the Zunigas, like the Attorney General, had not alleged any occurrence. The court added:

"It is Father & Sons' position that [the exclusion for expected or intended injury] does not apply 'because the allegations contained in the Zuniga Complaint are acts of negligence and not "knowing" or intentional acts.' *** Unfortunately, the Complaint does not sound in negligence ***. [The] counts allege that Father & Sons'

conduct was willful and intentional \*\*\*. \*\*\* [T]he allegations were of improper

work that was intentionally performed."

Thus, the court concluded that the exclusion for expected injury warranted entry of judgment in favor

of West Bend. The court also held that the exclusions for ongoing work and subcontracted work

relieved West Bend of the duty to defend Father & Sons against the underlying lawsuits. The court

reached essentially identical conclusions in the two other declaratory judgment actions West Bend

filed concerning the lawsuits that the Batias and the Robles filed against Father & Sons.

Father & Sons Contractors appealed from the decision involving the Attorney General's

complaint in docket No. 1-08-1693; from the decision involving the complaint the Zunigas filed

against Father & Sons Remodelers in docket No. 1-08-3057; from the decision involving the Batias'

complaint in docket No. 1-08-3055; and from the decision involving the Robles' complaint in docket

No. 1-08-3058. We consolidated the four cases for this appeal.

ANALYSIS

Standard of Review

Appeals from trial court summary judgment orders are governed by well-established rules.

Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd., 216 Ill. 2d 294, 305

(2005). A trial court's decision to grant summary judgment should only be made where there is no

genuine issue of material fact. Gaston v. Founders Insurance Co., 365 Ill. App. 3d 303, 314 (2006),

quoting State Farm Fire & Casualty Co. v. Moore, 103 Ill. App. 3d 250, 257 (1981). The summary

judgment procedure allows trial courts to determine whether a genuine issue of material fact exists

but is not designed for the trial court to try a question of fact. Northern Illinois, 216 Ill. 2d at 305,

citing Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 42-43 (2004). After a court reviews the pleadings, depositions, admissions and affidavits on file in the light most favorable to the nonmoving party, summary judgment is appropriate and the moving party is entitled to judgment as a matter of law when there is no genuine issue of material fact. Northern Illinois, 216 Ill. 2d at 305, citing General Casualty Insurance Co. v. Lacey, 199 Ill. 2d 281, 284 (2002).

Summary judgment is considered to be a drastic means of disposing of a case which courts employ only after an extraordinarily diligent review of the record has been conducted so that the party's right to fully present the factual basis for its claim is not preempted. Northern Illinois, 216 Ill. 2d at 305-06, citing Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc., 214 Ill. App. 3d 1073, 1077 (1991). "[S]ummary judgment *** should only be granted when the right of the moving party is clear and free from doubt." Northern Illinois, 216 Ill. 2d at 306, citing Dowd & Dowd, Ltd. v. Gleason, 181 Ill. 2d 460, 483 (1998). Accordingly, we apply a de novo standard of review to the trial court's order granting a summary judgment motion. Gaston, 365 Ill. App. 3d at 314, citing In re Estate of Hoover, 155 Ill. 2d 402, 411 (1993).

Declaratory Judgment Actions

The following rules apply when a court tries to determine whether an insurer has a duty to defend an insured:

"[T]he court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. [Citation.] An insurer may not justifiably refuse to defend an action

- 11 -

against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. [Citation.] Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. [Citation.]

The underlying complaints and the insurance policies must be liberally construed in favor of the insured. Where a policy provision is clear and unambiguous, its language must be taken in its 'plain, ordinary and popular sense.' (Hartford Accident & Indemnity Co. v. Case Foundation Co., 10 Ill. App. 3d 115, 121 (1973). A provision is ambiguous if it is subject to more than one reasonable interpretation. [Citation.] All doubts and ambiguities must be resolved in favor of the insured." (Emphasis in original.) United States Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 73-74 (1991).

Father & Sons contends that the trial court decided an ultimate issue of fact in the underlying actions when it held that the plaintiffs in the underlying suits alleged intentional acts and not negligence. "[I]t is generally inappropriate for a court considering a declaratory judgment action to decide issues of ultimate fact that could bind the parties to the underlying litigation." Allstate Insurance Co. v. Kovar, 363 Ill. App. 3d 493, 501 (2006), citing Maryland Casualty Co. v. Peppers, 64 Ill. 2d 187, 197 (1976). Here, the trial court did not decide that Father & Sons acted intentionally; rather, the court observed only that all of the plaintiffs in the underlying lawsuits alleged intentional acts. Father & Sons does not explain how the court's decision will affect any of the underlying suits.

Because the underlying plaintiffs' complaints include no counts for negligence, all of the underlying claims require proof of intent. The court's observation does not determine any issue of ultimate fact that will bind the parties in the underlying litigation. Therefore, the court did not err by observing that the complaints alleged intentional acts. See Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc., 122 Ill. App. 3d 301, 308 (1983).

Next, Father & Sons contends that the trial court erred by reading the term "occurrence" into the insuring agreement in the home repair and remodeling endorsement. The insuring agreement in the home repair and remodeling endorsement incorporates by reference the endorsement's schedule, and the schedule uses the term "occurrence" in setting West Bend's limit of liability. We must interpret the insurance contract as a whole, including language incorporated into the contract by reference. Kirschenbaum v. Northwestern University, 312 Ill. App. 3d 1017, 1029 (2000), citing Provident Federal Savings & Loan Ass'n v. Realty Centre, Ltd., 97 Ill. 2d 187, 193 (1983). The trial court here correctly found that the insuring agreement in the home repair and remodeling endorsement uses the term "occurrence."

Father & Sons does not claim that any of the underlying complaints allege occurrences within the purview of the policies' provisions. The policies specify that an occurrence is an accident. The natural and ordinary consequences of an act do not constitute an accident. State Farm Fire & Casualty Co. v. Tillerson, 334 Ill. App. 3d 404, 409 (2002), citing State Farm Fire & Casualty Co. v. Watters, 268 Ill. App. 3d 501, 506 (1994). "Where the defect is no more than the natural and ordinary consequences, [sic] of faulty workmanship, it is not caused by an accident." Tillerson, 334 Ill. App. 3d at 409. The four underlying complaints allege deliberate fraud and intentional acts of

faulty workmanship. Thus, the four complaints do not allege any occurrences. Accordingly, the trial court correctly entered judgments for West Bend on all four of its complaints because the four underlying complaints do not allege "occurrences."

Next, West Bend argues that the four underlying complaints do not allege any property damage. The insuring agreement in the home repair and remodeling endorsement incorporates the term "property damage" just as it incorporates the term "occurrence." Insurance policies like the ones West Bend issued to Father & Sons " 'are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses. [Citations.] Finding coverage for the cost of replacing or repairing defective work would transform the policy into something akin to a performance bond.' " Travelers Insurance Co. v. Eljer Manufacturing, Inc., 197 Ill. 2d 278, 314 (2001), quoting Qualls v. Country Mutual Insurance Co., 123 Ill. App. 3d 831, 833-34 (1984).

In Tillerson, the insurer sought a judgment declaring it had no duty to defend its insured, Tillerson, in a lawsuit Tillerson's customers, the Gauses, filed against him. The Gauses alleged they hired Tillerson to construct an addition to their home, and Tillerson built the addition on soil that settled unevenly, causing extensive damage to the addition. The Tillerson court held:

> "In their complaint, the Gauses merely seek either the repair or the
> replacement of defective work or the diminishing value of the home. The Gauses
> seek a recovery for economic loss, not physical injury to tangible property. There is
> no allegation that Tillerson tortiously injured the Gauses' home. No property damage

is alleged and coverage is not afforded." Tillerson, 334 Ill. App. 3d at 410. Following Travelers Insurance and Tillerson, we hold that the underlying plaintiffs' complaints here have alleged economic loss but have not alleged "property damage" within the purview of the provisions in the home repair and remodeling endorsement.

The exclusion for expected or intended injury presents a third basis for affirming the trial court's order. Father & Sons argues that the court could construe several of the individual facts alleged as allegations of negligent, not intentional, misconduct, as when the Zunigas allege "the electrical work contained improper wiring." Father & Sons contends that the exclusion for expected or intended injury does not apply to this allegation and other similar allegations of misconduct in all of the underlying complaints.

In Steadfast Insurance Co. v. Caremark Rx, Inc., 359 Ill. App. 3d 749, 751 (2005), the appellate court interpreted an exclusion of coverage for intentional, wilful and knowingly wrongful acts. Steadfast sought a judgment declaring that it had no duty to defend its insured, Caremark, in a lawsuit the underlying plaintiff, Bickley, filed against it. Bickley alleged that Caremark conspired secretly with drug manufacturers to obtain drugs at discounts, and then it favored retail sale of the high-priced drugs, increasing prescription costs. According to the complaint, Caremark misrepresented material information about its work as primary benefits manager under a specific health insurance plan. Bickley alleged that Caremark breached its duty to act with "care, skill, prudence and diligence." Steadfast, 359 Ill. App. 3d at 756. The Steadfast court held:

"[W]e cannot simply ignore the absence of allegations of negligent conduct and inclusion of only intentional conduct in the complaints. ***

- 15 -

Absent the isolated allegation that Caremark had a duty to act with skill, care, and prudence, the factual allegations upon which every breach of fiduciary duty count is based clearly predicate liability on a theory of intentional conduct; namely, a hidden scheme to deliberately convert a portion of the Plan's assets by conspiring with drug manufacturers in exchange for kickbacks. ***

***

*** As noted by the court in Connecticut Indemnity Co. v. DER Travel Service, Inc., 328 F.3d 347, 351 (7th Cir. 2003), phrases such as 'mislead and conceal,' 'scheme or device,' and 'intentionally and willfully' are the 'paradigm of intentional conduct and the antithesis of negligent actions.' ***

***

*** [T]he factual allegations in the instant underlying complaints make clear that any failure to disclose information was part of Caremark's overall scheme to mislead and defraud." Steadfast, 359 Ill. App. 3d at 758-61.

The Steadfast court concluded that Steadfast had no duty to defend or indemnify Caremark.

The four underlying complaints that are the subject of this declaratory judgment action similarly allege intentional misconduct designed to defraud customers of Father & Sons. The four underlying plaintiffs' complaints do not allege that Father & Sons acted negligently. Instead, the four plaintiffs' complaints allege that Father & Sons knowingly performed improper home repair and remodeling. Thus, the exclusion for expected or intended injury bars coverage for the acts alleged in all four of the underlying complaints.

- 16 -

1-08-1693, 1-08-3055, 1-08-3057, 1-08-3058 (Cons.)

CONCLUSION

We hold that the insuring agreement in the home repair and remodeling endorsement applies only where an underlying complaint alleges an occurrence and property damage not falling within the exception for expected or intended injury. The underlying complaints allege no occurrences and no property damage, and they allege expected or intended injuries. In this case, no evidentiary materials (affidavits, depositions, etc.) were filed that create issues of material fact that would affect West Bend's right to the judgments on its complaints. Therefore, we affirm the orders granting summary judgment in favor of West Bend on all four of its complaints.

Affirmed.

GALLAGHER, J., and LAVIN, J., concur.