In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3730

LAGESTEE-MULDER, INCORPORATED,

*Plaintiff-Appellant,*

*v.*

CONSOLIDATED INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 07793—**Gary S. Feinerman**, *Judge.*

ARGUED APRIL 19, 2012—DECIDED JUNE 26, 2012

Before EASTERBROOK, *Chief Judge*, and FLAUM and
WOOD, *Circuit Judges*.

FLAUM, *Circuit Judge*. This case presents a question
under Illinois insurance law governing an insurer's duty
to defend under a commercial general liability policy.
Appellant argues that Consolidated Insurance Company
breached its duty to defend by rejecting appellant's
tender of defense regarding a state court action brought

in Illinois. The underlying suit eventually settled, and appellant now seeks indemnification. The district court found that Consolidated Insurance Company had no duty to defend because the underlying complaint failed to allege damage to any covered property. We affirm.

## I. Background

The facts of this case are not contested. Lagestee-Mulder, Incorporated ("LMI") was hired by Crown Centre LLC ("Crown") to construct a multi-story office building (the "Project") in Frankfort, Illinois. LMI then subcontracted the supply and installation of the Project's windows and doors to Frontrunner Glass & Metal, Inc. ("Frontrunner"). Pursuant to the subcontract, Frontrunner was required to purchase and maintain insurance that named LMI as an additional insured. Frontrunner complied with this obligation and purchased an occurrence-based commercial general liability policy (the "Policy") from Consolidated Insurance Company ("Consolidated"). The Policy required Consolidated to cover sums that its insureds (Frontrunner as the primary policy holder, and LMI as an additional insured) became legally obligated to pay because of property damage, caused by an occurrence, taking place within the coverage territory, during the policy period. The Policy also required Consolidated to defend any suit seeking damages for covered property.

During the later stages of construction, Crown experienced water infiltration at numerous locations, as well as other construction defects, prompting Crown to file suit

in Illinois state court. LMI tendered the defense of its claim to Consolidated on March 6, 2009, but Consolidated made no coverage decision during the subsequent six months. Though LMI had not obtained a coverage decision, it began settlement discussions with Crown, and in October, 2009, the lawsuit settled. Although Consolidated was informed of all settlement talks, it participated in none. In a letter dated October 14, 2009, Consolidated denied coverage for Crown's claim against LMI and rejected LMI's tender of defense.

Following Consolidated's coverage denial, LMI brought the instant lawsuit alleging that Consolidated breached its duties under the Policy. The parties filed cross motions for summary judgment as to Consolidated's duty to defend, and the district court found in Consolidated's favor. This appeal followed.

## II. Discussion

We review the entry of summary judgment de novo, construing all facts and drawing all inferences in the light most favorable to the non-moving party. *Abstract & Title Guar. Co., Inc. v. Chicago Ins. Co.*, 489 F.3d 808, 810 (7th Cir. 2007). "Summary judgment is appropriate where the evidence before the court indicates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id*. The parties agree that Illinois law governs.

The question before us is whether Crown's state court complaint triggered Consolidated's duty to defend LMI

under the Policy. Specifically, we must determine whether the complaint alleged "property damage" covered by the Policy. The Policy is a standard occurrence-based commercial general liability ("CGL") policy which provides coverage for "property damage" caused by an "occurrence" during the "policy period." In addition to providing coverage, it also requires Consolidated to defend any suit seeking damages for covered property. To determine whether an insurer's duty to defend has been triggered, a court must compare the allegations in the underlying complaint with the language of the insurance policy. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.,* 828 N.E.2d 1092, 1098 (Ill. 2005). The factual allegations of the complaint determine whether there is a duty to defend. *Amerisure Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 815 (7th Cir. 2010). "If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." *Gen. Agents Ins.*, 828 N.E.2d at 1098. When "it is clear from the face of the underlying complaint that the allegations set forth . . . fail to state facts to bring a case within, or potentially within, the coverage of the policy" there is no duty to defend and no coverage. *Id*. However, "[a]n insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaint[ ] that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *United States Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (1991) (emphasis in original). Because an

insurance company must defend its insured in actions that are even *potentially* within coverage, its duty to defend is broader than its duty to indemnify. *CMK Development Corp. v. West Bend Mut. Ins. Co.*, 917 N.E.2d 1155, 1163 (Ill. App. Ct. 2009).

The rules governing application of CGL policy provisions are settled. Where the underlying suit alleges damage to the construction project *itself* because of a construction defect, there is no coverage. By contrast, where the complaint alleges that a construction defect damaged something *other* than the project, coverage exists. *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008). In other words, to find coverage, "there must be damage to something other than the structure, i.e., the building. . . ." *CMK Development Corp.*, 917 N.E.2d at 1164 (citing *Viking Construction Mgmt. Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 16 (Ill. App. Ct. 2005)); *Pekin Ins. Co. v. Richard Marker Associates, Inc.*, N.E.2d 362, 365 (Ill. App. Ct. 1997) (there must be "damage to other materials not furnished by the insured"). As articulated by the Illinois Supreme Court:

> Comprehensive general liability policies . . . are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses. [Citations.] Finding coverage for the cost of replacing or repairing defective work would transform the policy into something akin to a performance bond.

*Travelers Insurance Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481 (Ill. 2001) (quoting *Qualls v. Country Mut. Ins. Co.*, 462 N.E.2d 1288, 1291 (Ill. App. Ct. 1984)). Elaborating on this purpose, the Illinois Appellate Court has explained:

> [If] insurance proceeds could be used for damages from defective workmanship, a contractor could be initially paid by the customer for its work and then by the insurance company to repair or replace the work. [Citation.] Treating a CGL policy like a performance bond would be unjust to the CGL insurer, which, in contrast to the surety on a performance bond, cannot bring suit against the contractor for the defective construction.

*CMK Development*, 917 N.E.2d at 1167 (citing *Stoneridge Development Co., Inc. v. Essex Ins. Co.*, 888 N.E.2d 633, 653 (Ill. App. Ct. 2008)). Accordingly, Consolidated's duty to defend under the Policy was only triggered if the underlying complaint alleged covered damages—damage to something other than the structure itself.

We begin our analysis mindful that "[t]he underlying complaint[ ] and the insurance polic[y] must be liberally construed in favor of the insured." *United States Fid. & Guar. Co.*, 578 N.E.2d at 930. Crown's state court complaint brought four claims against LMI: (1) breach of construction contract by failing to, *inter alia*, properly perform, build, supervise, and construct; (2) breach of contractor's warranty for materials, equipment and construction services by failing to, *inter alia*, furnish labor and materials in good quality; (3) breach of contractor's call back warranty resulting in water infiltration by

failing to, *inter alia*, furnish labor and products free of defects; and (4) breach of contractor's call back warranty after completion by failing to correct defective work. Examples of alleged breaches include failure to properly construct and assemble the building, including windows and doors, and failure to furnish labor and materials of good quality. These breaches related to specific areas of the Project such as the cavity wall, the brick masonry veneer, and exterior wall cladding. In essence, the complaint alleged various deficiencies in the materials LMI used during construction, short-comings in LMI's workmanship, and defects in the building as constructed. Each count alleged that "as a result of LM[I]'s breaches . . . Crown has been damaged in an amount in excess of $50,000.00." The underlying complaint does not clarify what explicit damages Crown sustained, nor does it specify whether anything other than the building itself was damaged. Accordingly, LMI argues that the complaint's vague use of the term "damages" must be construed broadly enough to include all types of property loss, including covered loss to property other than the structure itself, thereby bringing the complaint within the purview of the Policy and triggering Consolidated's duty to defend.

In support of this position, LMI notes that courts have found a duty to defend when a complaint pleads facts which alternately could give rise to, or exclude coverage. For example, in *Chandler v. Doherty*, the plaintiff alleged she was injured by the defendant in a car accident. 207 N.E.2d 634, 636 (Ill. App. Ct. 1998). The defendant owned two cars, only one of which was

insured, but the complaint did not specify which car the defendant-insured was driving at the time of the accident. *Id*. Because the complaint did not exclude the possibility that the defendant was driving the insured car at the time of the accident, there was *potential* for coverage, which was sufficient to trigger the duty to defend. *Id*. at 638. *Sims v. Nat'l. Cas. Co.*, 193 N.E.2d 123 (Ill. App. Ct. 1963), presents similar facts. There, the plaintiff was a passenger in the defendant's truck and was injured when the truck struck another vehicle. *Id*. at 124. The plaintiff's failure to plead that he was an employee within the course of his employment at the time of the accident did not preclude coverage because it was equally as likely that the plaintiff was acting as an employee, excluding coverage, as not. *Id*. at 127.

LMI analogizes these cases to the facts at hand, but there is an important distinction. In *Chandler* and *Sims*, the underlying complaints pled specific facts that, when construed in favor of the insured, could trigger coverage. Here, no such facts exist. The underlying complaint describes LMI's alleged breaches in detail, specifying deficiencies in materials, workmanship, and in the building's construction. But nowhere does the complaint allege damage to anything other than the building. Instead, it exclusively alleges damage to the structure itself, which is insufficient to trigger Consolidated's duty to defend. Though it is true that the complaint claims water infiltration, it identifies no underlying damage caused by the water. In other words, the water infiltration described in the complaint is not presented as the cause of unspecified property damage, but instead, the result of faulty construction.

Our recent analysis in *Amerisure Ins. Co. v. Microplastics, Inc.* is instructive, affirming that the mere possibility that covered damage occurred does not trigger a duty to defend under Illinois law. 622 F.3d 806 (7th Cir. 2010). There, a buyer of plastic molding components counter-sued the manufacturer alleging breaches of quality and engineering specifications. The underlying counterclaim asserted that "[Manufacturer] is liable to [buyer] for the costs charged to [buyer] associated with the defects" but did not specify the nature of the defects. *Id.* at 811. Similar to this case, the manufacturer argued that use of the word "defects" was sufficient to show damage to property potentially within the CGL policy's property damage provision, and therefore trigger the duty to defend. This court disagreed, reiterating that under "Illinois law, an insurer has no duty to defend unless the underlying claim contains explicit factual allegations that potentially fall within policy coverage." *Id.* at 810. The counterclaim contained no such factual allegations, and because the allegations were fully consistent with a simple breach of warranty claim, there was no duty to defend. *Id. Microplastics* recognized that CGL policies are "intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses." *Id.* at 811 (citing *West Bend Mutual Ins. Co. v. People of Illinois*, 929 N.E.2d 606, 614-15 (Ill. App. Ct. 2010) (citation omitted)). Moreover, this court recognized that while the general allegations of the complaint did not

"logically foreclose the theoretical possibility" that the complaint alleged damage to property beyond the defective products, the insurer's duty to defend while broad, is not without limits. *Id*. at 812. "Implied claims that are not specifically alleged can be ignored." *Id*. (citing *Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, 500 F.3d 640, 644 (7th Cir. 2007)).

As *Microplastics* confirmed, it is the actual complaint, and not a hypothetical version that must be considered when determining whether an insurer's duty to defend was triggered. 622 F.3d at 812. Though LMI asks us to infer claims for property damage, we are not obliged to recognize claims that are merely implied. *Del Monte Fresh Produce N.A., Inc.*, 500 F.3d at 644 ("[I]t is the actual complaint, not some hypothetical version, that must be considered." (citing *Connecticut Indemnity Co. v. DER Travel Service, Inc.*, 328 F.3d 347, 350-51 (7th Cir. 2003))). Illinois law requires that the "underlying complaint allege[] facts within or potentially within policy coverage. . . ." *Gen. Agents Ins.*, 828 N.E.2d at 1098. Acknowledging that we must construe the complaint liberally in favor of the insured, "a theory cannot be 'supported by the complaint' if the complaint does not allege facts to support the elements of that theory. . . . [W]e will not read into the complaint facts that are not there." *Pekin Ins. Co. v. Roszak/ADC, LLC*, 231 N.E.2d 799, 806 (Ill. App. Ct. 2010). "[W]e are not permitted simply to speculate about possible factual scenarios that are absent from the claim itself." *Microplastics, Inc.*, 622 F.3d at 814. Here, the factual allegations of the complaint cannot support LMI's assertion that Crown alleged anything other than

defective construction because the complaint is devoid of any facts that would support this construction. Because the complaint only alleged damage to the structure itself, Consolidated's duty to defend was not triggered.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Consolidated.